IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR450 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| SHANE CARABALLO, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Justin E. Herdman, United States Attorney, and Margaret A. Kane, Assistant United States Attorney and hereby files this sentencing memorandum. The Government agrees with the calculations contained within the Final Presentence Investigation Report filed April 3, 2019, and asks this Court to apply a four point enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B), that CARABALLO possessed ammunition in connection with a felony offense.  (R. 27: Presentence Investigation Report, PageID 133).

## I. OFFENSE CONDUCT AND GUIDELINE CALCULATION

A.  Offense Conduct

On May 10, 2018, CARABALLO reported to his state parole officer and submitted a urine screen which tested positive for illegal narcotics.  (R. 26:  PSR, PageID 109). CARABALLO admitted to using drugs.  His positive drug screen and violent criminal history prompted his parole officer to schedule a home visit of CARABALLO's residence.

A home visit occurred on May 23, 2018.  (Id.  PageID 109).  Officers searched CARABALLO's bedroom and located 14.02 grams of cocaine in a shoe in Caraballo's bedroom. $195 U.S. currency was found in between his mattresses and one round of .25 caliber ammunition was located on a bedside table.  (Id.).

Officers also searched the home's living room.  They located a box of plastic baggies and a green Crown Royal bag on the room's mantle.  Two digital scales and a box of .25 caliber ammunition totaling thirty-four (34) rounds was inside of the Crown Royal bag.  The rounds of ammunition were manufactured outside of the State of Ohio.  On scene, CARABALLO admitted that the drugs and money found in his bedroom were his.  CARABALLO was placed under arrest. (Id.).

While being transported to the county jail, CARABALLO further admitted that everything found in the home was his.  CARABALLO stated that he was a member of the Heartless Felons gang at one time but was beat up and left the gang.  (Id.).  He also admitted to selling cocaine but stated that he only sold to a few people and most were family.  (Id.).

CARABALLO was prohibited from possessing ammunition after sustaining the following felony convictions punishable by imprisonment for a term exceeding one year: Discharge of a Firearm on or Near Prohibited Premises with Firearm Specification and having Weapons while under Disability, in Case Number CR-15-599517, on or about January 19, 2016, in the Cuyahoga County Court of Common Pleas; Felonious Assault with Firearm Specification, and Having Weapons While Under Disability, in Case Number 09-531458, on or about February 4, 2010, in the Cuyahoga County Court of Common Pleas; Felonious Assault, in Case Number CR-07-493955, on or about September 11, 2007, in the Cuyahoga County Court of Common Pleas; and Attempted Robbery, in Case Number CR-05-470881, on or about January 20, 2006, in the Cuyahoga County Court of Common Pleas.

B.  Guideline Calculation

CARABALLO was indicted on August 14, 2018, in a two count Indictment.  Count 1 charged CARABALLO with Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1).  He was charged in Count 2 with Possession with Intent to Distribute Cocaine, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  CARABALLO plead guilty to the Indictment on January 10, 2019.  The parties agreed that the base offense level was 14 but reserved the right to argue whether the four point specific offense level characteristic applied, that the ammunition was used or possessed in connection with another felony offense.

The Presentence Investigation Report lists the combined adjusted offense level as 18 (R. 27:  PSR, PageID 133).  The report finds that the specific offense characteristic listed in § 2K2.1(b)(6)(B  applies.  The Defendant argues that this enhancement does not apply.  The Government submits that this specific offense characteristic applies and should be applied in the present case.

| U.S.S.G. § 2K2.1: Felon in Possession of a Firearm and Ammunition (Count 1) | | |
|---|---|---|
| Base offense level | 14 | § 2K2.1(a)(2) |
| Specific offense characteristics (possessed firearm in connection with felony offense) | +4 | § 2K2.1(b)(6)(B) |
| **Subtotal** | **18** | |

C.  Specific Offense Characteristic

The Government respectfully asks that this Honorable Court find that CARABALLO possessed the ammunition in connection with the felony offense of drug trafficking, pursuant to USSG §2K2.1(b)(6)(B).

In order to apply the four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B), "the district court must find that the government has established by a preponderance of the evidence that the defendant (1) committed another felony, and (2) used or possessed a firearm or ammunition in connection with that offense." United States v. Jones, 470 F. App'x 477, 480 (6th Cir. 2012).  Underpinning the enhancement is the rationale that "the presence of the firearm has the potential of facilitating another felony offense." § 2K2.1 cmt. n.14(B) (emphasis added). For that reason, the enhancement is imposed "if the firearm ... facilitated, or had the potential of

3

facilitating, another felony offense." § 2K2.1 cmt. n.14(A). In drug trafficking cases, § 2K2.1(b)(6) applies when "a firearm is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia." § 2K2.1 cmt. n.14(B). However, under either application, the government must demonstrate a sufficient "nexus between the firearm and an independent felony," such that the possession of the firearm is not "merely coincidental." Taylor, 648 F.3d at 432 (first quoting United States v. Angel, 576 F.3d 318, 321 (6th Cir. 2009); and then quoting United States v. Ennenga, 263 F.3d 499, 503 (6th Cir. 2001). In other words, there must be "a clear connection between the gun that served as the basis for the conviction for felon in possession of a firearm and ... the other offense that triggers the enhancement." Jackson, 877 F.3d at 237. It is the government's burden to establish the factors supporting this enhancement by a preponderance of the evidence. United States v. Seymour, 739 F.3d 923, 929 (6th Cir. 2014).

Proof of intent to distribute may be inferred from a number of factors, including "the possession of quantities of drugs too large for personal use; the value of the drugs; the presence of drug distribution paraphernalia, including scales and packaging materials; the concurrent seizure of large amounts of currency; and the purity of the drugs." United States v. Montgomery, 491 F. App'x 683, 689 (6th Cir. 2012) (citations and internal quotation marks omitted). No one factor is dispositive; rather, the controlling principle is that the evidence is viewed collectively. See Gort-Didonato, 109 F.3d at 320.

Courts have upheld the application of this sentencing enhancement even when there is no direct evidence of drug trafficking and the quantity involved is not great when the defendant intended to distribute the narcotics in question.  The enhancement was upheld in United States v. Frazier, 426 F. App'x 401 (6th Cir. 2011), where the defendant had 13.8 grams of marijuana and

4

2.4 grams of crack cocaine on his possession with a firearm and had not engaged in any drug sales in officer's presence. The enhancement was also upheld when a defendant was observed dropping 14.5 grams of marijuana divided into ten small bags next to his vehicle containing a firearm. United States v. Burton, 440 Fed.Appx. 474 (6th Cir. 2011).

Using similar reasoning, courts have upheld the enhancement even when only ammunition is recovered without a firearm. United States v. Coleman, 627 F.3d 205 (6th Cir. 2010). See also United States v. Posley, 706 Fed. Appx. 313(6th Cir. 2017). Coleman applied the fortress theory and held that the defendant's possession of ammunition facilitated or had the potential to facilitate felony drug trafficking. Coleman, 627 F.3d 205. Coleman had a large bag filled with marijuana and a box of .380 caliber ammunition with 22 live rounds in a dresser drawer. Police also found two digital scales with marijuana residue in the kitchen and $1,820 in cash from Coleman's person. The court reasoned that the ammunition was easily accessible and stored in close proximity to the illegal drugs. Id. The ammunition also emboldened Coleman in knowing that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that Coleman was a step closer to having a fully-loaded firearm. Id. The court in Posley used similar reasoning to find that drugs located in the toilet in Posley's home was in close proximity to the ammunition found on his person and upheld the finding that his possession of ammunition facilitated drug trafficking. Posley, 706 Fed. Appx. 313.

In the present case, the cocaine and money were found in close proximity to the ammunition and drug trafficking tools. 14.02 grams of cocaine was located in CARABALLO's bedroom along with $195 in U.S. currency and one round of .25 caliber ammunition. (R. 26: PSR, PageID 109). Plastic baggies and two digital scales with cocaine residue, items commonly

5

used in drug trafficking, were located in the home's living room along with a box of 34 rounds of .25 caliber ammunition. (Id.). Both the scales and ammunition were located inside of the same Crown Royal bag. CARABALLO admitted that all of these items were his and further admitted to selling cocaine. (Id.). Based on the proximity of the ammunition to the narcotics along with the additional drug trafficking tools found and CARABALLO'S admissions to selling drugs, this Court should find that the ammunition facilitated the felony drug trafficking.

CARABALLO'S criminal history category is V (Id. PageID 117). After acceptance of responsibility, CARABALLO'S offense level would be 15 if the specific offense characteristic is added. With an offense level of 15 and a criminal history category of V, his guideline imprisonment range is 37-46 months.

II.     **SENTENCING FACTORS 18 U.S.C. § 3553(A)**

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

> This Court is required to consider the following factors in determining the sentence.
>
> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>(3) the kinds of sentences available;
>
>(4) the kinds of sentence and the sentencing range established for--
>
>(5) any pertinent policy statement--
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

<u>18 U.S.C. § 3553(a).</u>

The Government is bound by the terms of the written plea agreement entered into with CARABALLO.  Therefore, the Government is not permitted to ask for an upward variance. However, the Government respectfully requests that the Court impose a sentence at the top of the applicable guideline range found by the Court based on CARABALLO'S history and characteristics.

Caraballo has a violent criminal history.  Under current case law, <u>United States v. Le' Ardrus Burris</u>, 16-3855 (en banc, 6th Cir. 2019), Caraballos's prior offenses no longer qualify as felony offenses of violence under the sentencing guidelines and do not enhance CARABALLO'S base offense level.  This Court should still consider the underlying facts of these prior convictions when determining the appropriate sentence.

CARABALLO has a conviction for Attempted Robbery, Carrying Concealed Weapons, and Receiving Stolen Property from 2006.  He served eight months in prison after violating community control.  In this case, CARABALLO, along with two juvenile co-defendants, assaulted three victims.  The defendants took one of the victim's belongings after kicking him

7

and caused bruising.  A sawed-off shotgun was located in CARABALLO's vehicle after the incident, which he denied was his.  (R. 26:  PSR, PageID 113).

CARABALLO'S second adult felony conviction was in 2007 for Felonious Assault.  (Id., PageID 114).  In this case, CARABALLO, along with three other co-defendants, caused serious physical harm to a victim using a baseball bat.  The defendants also stole items from the victim.

CARABALLO also had another Felonious Assault with Firearm Specifications and Having a Weapon While under Disability conviction in 2009.  (Id., PageID 115).  In this case CARABALLO got into an altercation with a male over a female while at a bar.  After a physical altercation with a victim, CARABALLO pulled a firearm from his waistband and fired three rounds at one victim.  He then fired two rounds at another victim and shot a third victim in the foot.  (Id.).

CARABALLO also had a conviction in 2015, for Discharge of a Firearm on or near Prohibited Premises with Firearm Specifications, and Having a Weapon while Under Disability. (Id., PageID 116).  CARABALLO, along with two other co-defendants, possessed three firearms in a vehicle and discharged the weapons over a public road or highway creating a substantial risk of physical harm.  The weapons in the vehicle were all loaded.  (Id.).

CARABALLO had multiple conduct reports while in prison for the above offenses (Id., PageID 113, 114, 116, 117).  These included physical fights, making threats to prison staff, and having illegal contraband.  (Id.,  PageID 116).

### III.    CONCLUSION

Based on the nature of the current offense, CARABALLO'S criminal history, and the fact that this offense was committed while on post release control, the Government respectfully requests that this Court apply the four level enhancement pursuant to USSG §2K2.1(b)(6)(B), and sentence CARABALLO at the high end of the advisory guideline range.

                    Respectfully submitted,

                    JUSTIN E. HERDMAN
                    United States Attorney

By:   /s/ Margaret A. Kane
        Margaret A. Kane (OH: 0082084)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3624
        (216) 522-7358 (facsimile)
        Margaret.Kane@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 5th day of April, 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Margaret A. Kane
Margaret A. Kane
Assistant U.S. Attorney